UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>v.<br><br>DAMIEN GOUSE,<br>    Defendant. | )<br>)<br>)<br>)<br>)    C.R. No. 11-112M<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM AND ORDER

Damien Gouse has filed a Motion to Dismiss under the Interstate Agreement of Detainers ("IAD") 18 U.S.C. App 2 § 2 on the grounds that the federal government's use of the writ of habeas corpus *ad prosequendum* ("writ") resulted in three violations of the IAD Art. IV (a) and the government's attempt to avoid the IAD led to a further violation of the anti-shuttling provisions contained in both Art. III (d) and Art. IV (e). (*See* ECF No. 17 at 9.) Mr. Gouse also asserts the dismissal of the government's claims should be with prejudice. (ECF No. 17 at 10.) Because this Court finds that the government did not lodge a detainer against Mr. Gouse in the present indictment, the IAD was not violated and therefore Mr. Gouse's Motion to Dismiss is DENIED.

### I. BACKGROUND

Although certain key facts are in dispute, Magistrate Judge David L. Martin, in an earlier opinion in this case, laid out a fairly complete chronology. *See Opinion and Order Overruling Defendant's Objection to Arraignment.* (ECF No. 7 at 3-7.) Mr. Gouse is charged in the instant indictment with being a felon in possession of a firearm, possession with intent to distribute

grams or more of cocaine base, and using and possessing a firearm in furtherance of a drug trafficking crime. *Id.* at 2.

On November 29, 2007 Providence police officers arrested Gouse, and he was charged in Rhode Island state court with narcotics and firearms offenses. *Id.* at 3. On February 1, 2008, while free on bail, Mr. Gouse failed to appear in state court. *Id.* The federal government then filed a complaint on February 8, 2008, in United States District Court for the District of Rhode Island, charging him with offenses related to the state charges. *Id.* Magistrate Judge Lincoln D. Almond signed a warrant for his arrest on these charges. *Id.*

On March 13, 2008 Mr. Gouse was charged in Massachusetts with offenses unrelated to the charges pending against him in Rhode Island and after trial was sentenced to fifteen years confinement. *Id.* at 4. A federal warrant, not a detainer, was then forwarded to the Massachusetts state facility where Mr. Gouse was incarcerated. *Id.* Mr. Gouse submitted a request for disposition of the pending federal complaint under the IAD, Art. III on October 1, 2009, although no federal detainer had yet been lodged against him.[1] *Id.* This Court docketed Mr. Gouse's IAD request on October 5, 2009.

On October 15, 2009, Mr. Gouse was transferred from Massachusetts to the Rhode Island Adult Correctional Institution ("ACI") and arraigned in Rhode Island state court. *Id.* at 5. On the the same date, a federal detainer was lodged against Mr. Gouse. *Id.* Magistrate Judge Almond held an initial appearance for Mr. Gouse on October 19, 2009 where Mr. Gouse agreed to a

---

[1] Mr. Gouse disagrees and claims the record is unclear as to whether a detainer had been lodged at this point, but he claims it is clear he had notice under the IAD of the charges pending against him and requested to be taken to Rhode Island to bring about final disposition of those charges. *Id.*

2

waiver under the IAD.[2] *Id.* On December 2, 2009 a federal grand jury returned an indictment against Mr. Gouse on his federal charges. *Id.*

Because of the federal indictment, the State of Rhode Island dismissed charges against Mr. Gouse on January 8, 2010. *Id.* The State of Rhode Island then transferred Mr. Gouse from the ACI back to Massachusetts state custody without notifying United States Marshall Service on February 10, 2010. *Id.* at 6.

On March 17, 2010 the federal government filed a motion to dismiss the indictment in the prior action without prejudice. *Id.* Mr. Gouse filed an objection and filed a cross-motion to dismiss the indictment with prejudice. *Id.* United States District Judge William E. Smith granted the government's motion to dismiss the indictment without prejudice on April 9, 2010. *Id.*

Mr. Gouse was indicted in the present action on June 29, 2011. *Id.* On June 30, 2011, a writ of habeas corpus ad *prosequendum* was signed, and on July 12, 2011 United States Marshalls moved Mr. Gouse from Massachusetts to the Wyatt Detention Center in Rhode Island. *Id.* Mr. Gouse appeared in court on July 13, 2011 for his arraignment, objected to the arraignment proceeding, and asked to be returned to Massachusetts state custody. *Id.* at 6-7. This Court denied Mr. Gouse's request. *Id.* at 7.

The federal government filed a memorandum concerning the applicability of the IAD on July 20, 2011. (ECF No. 5.) Mr. Gouse filed his response on July 22, 2011. (ECF No. 6.) On August 5, 2011 this Court held a hearing on Mr. Gouse's objection to the arraignment proceeding and his renewed request to return to Massachusetts custody. (ECF No. 7.) This

---

[2] Mr. Gouse disagrees and maintains the only waiver he made was a "waiver of his right not to be shuttled back and forth between Rhode Island state custody at the ACI and the United States District Court in Providence." *Id.*

Court found that the IAD was not violated and overruled Mr. Gouse's objection to the arraignment and his request to be returned to Massachusetts. *Id.* at 10.

On December 19, 2011 Mr. Gouse filed this Motion to Dismiss (ECF No. 17) and the government filed a supplemental memorandum concerning the applicability of the IAD (ECF No. 23.) Mr. Gouse claims the writ violated Art. IV (a) of the IAD and violated the anti-shuttling provisions. (ECF No. 17 at 9.) The government argues a writ of habeas corpus *ad prosequendum* is not a detainer, no detainer was lodged on this indictment, and therefore the IAD was not triggered. (ECF No. 23 at 3.)

## II. ANALYSIS

### A. The Interstate Agreement on Detainers Act

The IAD is an agreement enabling a state (defined to include the federal government) to obtain custody of a prisoner held by another state to try the prisoner on criminal charges. *Reed v. Farley*, 512 U.S. 339, 341 (1994). Custody is obtained by filing a detainer with the state where the prisoner is held. *United States v. Paige*, 332 F. Supp. 2d 467, 470 (D.R.I. 2004). A detainer is a legal order requiring the state with current custody over the prisoner to hold the prisoner, when he has finished serving his sentence, so that he may be tried by the federal government or another state for a different crime. *Alabama v. Bozeman*, 533 U.S. 146, 148 (2001).

The IAD "creates uniform procedures for lodging and executing a detainer." *Id.* When a state or the federal government triggers the IAD by filing a detainer against a prisoner in state, the warden of the prison where the prisoner is serving must promptly notify him or her of the detainer and the right to request a final disposition under the IAD. 18 U.S.C. App 2 § 2. Once the prisoner makes the request, he or she is entitled to additional rights under Article III,

including the right to trial within 180 days after the delivery of the notice. *Id.* If no trial is had on any indictment, the indictment "shall not be of any further force or effect, and the court enter an order dismissing the same." *Id.*

Article IV sets forth the anti-shuttling provision, stating a trial must be had "prior to the prisoner's being returned to the original place of imprisonment" otherwise the charges will be dismissed. *Alabama*, 533 U.S. at 150 (quoting Art. IV(e)). Section 9 of the IAD specifically allows for dismissal without prejudice for an indictment from the federal government. 18 U.S.C. App 2 § 2.

The United States is a party to the IAD, so once the federal government lodges a detainer against a prisoner, they must comply with the IAD's provisions. *See United States v. Mauro*, 436 U.S. 340, 361 (1978). After a detainer is lodged, any subsequent writ issued against the same prisoner is a "written request for temporary custody" under the IAD. *United States v. Currier*, 836 F.2d 11, 14 (1st Cir. 1987) (citing *Mauro*, 436 U.S. at 361-64). It does not matter whether the government issues a writ or a piece of paper labeled written request for temporary custody, as in either case the federal government is able to obtain temporary custody over the prisoner. *Mauro*, 436 U.S. at 362.

### B. Writ of Habeas Corpus *ad prosequendum*

A writ of habeas corpus *ad prosequendum*'s function is to secure the presence of the defendant in federal criminal cases for trial. *Id.* at 341. A writ requires the defendant's presence immediately. *Id.* Conversely, a detainer only puts the prison officials where the defendant is incarcerated on notice the prisoner is wanted. *Id.* Either a prosecutor or law enforcement officer may lodge a detainer against the defendant. *Id.*

A writ is not a detainer for purposes of the IAD. *Id.* at 361. When the federal government obtains prisoners through a writ, the problems the IAD seeks to solve do not arise, and therefore the federal government is not circumventing the IAD through use of the writ. *Id.* The IAD only applies to prisoners against whom detainers have been filed. *See United States v. Dowdell*, 595 F.3d 50, 63 (1st Cir. 2010). The use of a detainer invokes the IAD, but the use of a writ does not. *United States v. Casas*, 425 F.3d 23, 67 (1st Cir. 2005).

### C. Activation of the IAD

The IAD is only activated by a detainer on the instant charges. Because no detainer was filed on this particular set of indictments the IAD was not triggered. Even if the federal government did trigger the IAD under the prior set of indictments by lodging a detainer against Mr. Gouse, the government still complied with the IAD by dismissing the prior indictment without prejudice, allowed for by section 9. (ECF No. 7 at 9.) A writ requires the prisoner's presence immediately, unlike a detainer, which only puts the prison officials on notice the prisoner is wanted. Therefore a writ does not bring up the issues of access to a speedy trial that the IAD was designed to prevent.

Mr. Gouse contends the federal government's use of the writ resulted in three violations of the IAD Art. IV (a). (ECF No. 17 at 9.) He asserts the government did not present the writ as a written request for temporary custody or availability. *Id.* Mr. Gouse also claims no thirty day waiting period for the sending state governor to disapprove the request was allowed for, and neither the Governor of Massachusetts nor Mr. Gouse through the Governor was given notice of the writ. *Id.* Lastly, Mr. Gouse claims the federal government violated the anti-shuttling provisions of both Art. III (d) and Art. IV (e) by shuttling him back to Rhode Island to face the same charges under the new indictment. *Id.* at 9-10.

6

Mr. Gouse argues he should be returned to Massachusetts as the federal government is attempting to circumvent the requirements of the IAD by re-issuing the same indictment without the detainer. The Seventh Circuit held in a case similar to Mr. Gouse's that the IAD would not apply. "Because the government withdrew its detainer against [the defendant] and notified him of the withdrawal, the provisions of the Act no longer applied to him." *United States v. Donaldson*, 978 F.2d 381, 391 (7th Cir. 1992). The withdrawal of the detainer removes the defendant from the purview of the IAD, as the IAD only prevents detainers from remaining lodged without any action taken for long periods of time. *See Mauro*, 436 U.S. at 360.

This case is similar to *Donaldson* as the government lodged a detainer against Mr. Gouse but then withdrew it, in this case after the indictment was dismissed without prejudice. Thus the federal government's actions here did not frustrate the purpose of the IAD, to allow for speedy disposition of charges pending against defendants in other jurisdictions. Because Mr. Gouse was aware of the dismissal of the detainer, the IAD's provisions no longer applied to him. If the government does not inform the defendant that the charges against him are dismissed, files an indictment based on the same conduct, and brings the defendant before the court pursuant to a writ, the government may not benefit from the dismissal of charges. *See United States v. Cephas*, 937 F. 2d 816, 820-821 (2d Cir. 1991), *cert. denied*, 502 U.S. 1037, 112 (1992). Here, however, Mr. Gouse knew the charges against him were dismissed and knew the federal government took action to withdraw the detainer.

Mr. Gouse also contends the federal government overstates the holding in *United States v. Mauro*. "The United States is bound by the Agreement when it activates its provisions by filing a detainer against a state prisoner and then obtains his custody by means of a writ of

habeas corpus *ad prosequendum*," showing that even though a writ is not a detainer, once a detainer is lodged, the IAD is implicated. *Mauro*, 436 U.S. at 349.

However, *Mauro* differs from this case as the detainer was lodged against that defendant for the charges he was held against, not for dismissed charges as is the case here. In Mr. Gouse's case there was no detainer on the instant charges. The First Circuit recently held "*Mauro* was saying that a habeas writ – even though it followed a detainer – retained its pre-IAD authority to compel a state to surrender a prisoner." *United States v. Pleau*, 680 F.3d 1, 6 (1st Cir. 2012) *cert. denied*, 133 S. Ct. 930 (U.S. 2013). The habeas statute overrides any contrary position of the state, like any other federal law. *Id.* Therefore a federal government's writ retains its authority over a prisoner and in this case the IAD is not activated.

### III. CONCLUSION

This Court finds that the IAD was not violated as the federal government did not lodge a detainer against Mr. Gouse in the present indictment. Therefore, for all of the foregoing reasons, Mr. Gouse's Motion to Dismiss (ECF No. 17) is DENIED.

IT IS SO ORDERED.

/s/ John J. McConnell, Jr.
John J. McConnell, Jr.
United States District Judge

June 18, 2013

8